# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Axis Surplus Insurance Company, <br><br> Plaintiff, <br> v. <br><br> Pye-Barker Fire and Safety, LLC, <br><br> Defendant. | Case No. 2:24-2173-RMG <br><br> **ORDER AND OPINION** |

This matter is before the Court on Defendant's motion to exclude Plaintiff's expert Daniel Arnold (Dkt. No. 43); Plaintiff's motion to exclude the testimony of J.R. Nerat (Dkt. No. 45); Plaintiff's motion to exclude Defendant's expert Jeffrey Berino (Dkt. No. 46); and Plaintiff's motion to exclude Defendant's experts Matthew Dare and Charles Sullivan (Dkt. No. 47). The motions have been fully briefed and are ripe for disposition.

**I.    Background**

This action was brought by Plaintiff Axis Surplus Insurance Company, which provided insurance coverage for its insured, Hospitality Management Group, Inc., for damages suffered from a fire at one of Hospitality's properties, Magnolias Restaurant, located in Charleston, South Carolina. Plaintiff reimbursed its insured in excess of $3.9 million for damages from the fire and was subrogated to its insured's right of recovery against any at fault third party. Plaintiff sued Defendant for negligence and breach of contract related to the performance of its duties to inspect, test, and maintain a fire suppression system, which Plaintiff alleges failed to properly operate to suppress the fire.

The Magnolia's Restaurant fire occurred in the early morning hours on August 7, 2021. There were no eyewitnesses to the outbreak of the fire. The parties agree that the fire began when

1

a restaurant employee left a plastic dish rack on a two burner range in the prep kitchen, which subsequently melted from the heat of the burner range's pilot light. Beyond that fact, the parties and their experts disagree about whether the fire suppression system failed due to improper maintenance by the Defendant (Plaintiff's view) or whether excess grease near the burner range ignited and produced a massive fire outside the area of the fire suppression system (Defendant's view). With the absence of eyewitnesses and significant fire damage of the premises, the experts must necessarily rely on circumstantial evidence, physical evidence gathered post fire, and their special expertise in determining the cause and progress of fires to formulate their opinions. Each party promotes its own distinct view of the facts and circumstances leading to the fire and contends the opposing party's experts should be excluded because of an alleged failure to meet Rule 702's requirements. Plaintiff further seeks to exclude a witness identified by Defendant as a lay witness, J.R. Nerat, because he is alleged to be offering expert opinions after the deadline for identifying experts and failed to present an expert report. The Court addresses each of these motions below.

## II.  Legal Standards

### A. Lay Opinion offered under Rule 701 of the Federal Rules of Evidence

Rule 701 concerns lay opinion evidence and authorizes a witness "not testifying as an expert" to present opinion evidence that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." See Fed. R. Evid. 701. Rule 701's "guiding principle" is that the opinion must "be based on personal knowledge." *United States v. Farrell*, 921 F.3d 116, 143–44 (4th Cir. 2019) (quoting *United States v. Johnson*, 617 F.3d 286, 293 (4th Cir. 2010)). The rule does not permit a witness to express an opinion "as to matters which are beyond the realm of common experience and which

require the special skill and knowledge of an expert witness." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000) (*quoting Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979))

**B. Expert Opinions under Federal Rule of Evidence 702**

Under Federal Rule of Evidence 702, the Court acts as a gatekeeper "to verify that expert testimony is 'based on sufficient facts or data.**"** *E.E.O.C. v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015) (Agee, J., concurring) (citing Fed. R. Evid. 702). The expert testimony must be shown to be "not only relevant, but reliable." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993). "Because 'expert witnesses have the potential to be both powerful and quite misleading,' it is crucial that the district court conduct a careful analysis into the reliability of the expert's proposed opinions." *United States v. Fultz*, 591 Fed. App'x 226, 227 (4th Cir. 2015) (quoting *Cooper v. Smith & Nehpew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

The trial court must ensure that the testimony (1) "will help the trier of fact to understand the evidence or to determine a fact in issue,"; (2) "is based on sufficient factors or data"; (3) "is the product of reliable principles and methods,"; and (4) "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," *Daubert*, 509 U.S. at 592–93, and whether the expert has "faithfully appl[ied] the methodology to the facts." *Roche v. Lincoln Prop. Co.*, 175 Fed. App'x 597, 602 (4th Cir. 2006). Additionally, the Court must evaluate any proposed expert testimony under Federal Rule of Evidence 403.

Factors to be considered in assessing the reliability of technical or scientific evidence include "whether a theory or technique…can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of error," the "existence and maintenance of standards controlling the technique's operations," and whether the theory or technique has garnered "general acceptance." *Daubert*, 509 U.S. at 593–94. Courts have also considered whether the "expert developed his opinions expressly for the purposes of testifying" or through research conducted independent of litigation." *See Wehling v. Sandoz Pharm. Corp.*, 162 F.3d 1158 at *3 (4th Cir. 1998); *Daubert v. Merrell Dow Pharm. Inc.*, 113 F.3d 1311, 1317 (9th Cir. 1995) (on remand). The *Daubert* factors are not exhaustive and illustrate the type of factors "that will bear on the inquiry." *United States v. Hassan*, 742 F.3d 104, 130 (4th Cir. 2014).

The proponent of the expert testimony carries the burden to establish the admissibility of the testimony by a preponderance of the evidence. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); Fed. R. Evid. 702 (noting witness is qualified if the proponent demonstrates "it is more likely than not that" that Rule 702's factors are met). The Fourth Circuit has held that Rule 702 excludes expert testimony on matters within jurors' common knowledge. *Persinger v. Norfolk & W. R. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990); *Scott v. Sears, Roebuck, & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986) (noting by negative implication that "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance"); Fed. R. Evid. 702 (requiring that an admissible expert opinion be based upon "scientific, technical, or other specialized knowledge"). The admission of "common sense" expert testimony is dangerous because "the

evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." *Scott*, 789 F.2d at 1055.

### III.  Discussion

<u>Defendant's motion to exclude the testimony of Plaintiff's expert, Daniel Arnold (Dkt. No. 43)</u>:

Plaintiff's expert, Daniel Arnold, is a professional engineer who has four decades of experience in fire protection engineering and design of fire suppression systems. (Dkt. No. 43-1 at 19-20). Arnold opines that the restaurant's fire suppression system, which was designed to disperse a chemical retardant to suppress a fire, failed because Defendant improperly placed a critical piece of the system known as the fusible link. Arnold further opines that had the suppression system performed properly, the August 21, 2025 fire would have been caused only limited damage in the immediate area of the two burner range. (*Id*. at 15).

Defendant seeks to exclude Arnold's testimony, arguing that Arnold failed to take proper measurements of the allegedly improperly placed fusible link and did not conduct proper tests to confirm his opinion that a properly functioning fire suppression system would have extinguished the fire. *See generally* (Dkt. No. 43). Plaintiff, in response to the motion to exclude Arnold's testimony, provided photographs which documented Arnold's opinion regarding the alleged improper placement of the fusible link, explained Arnold's opinion about the failure of the fire suppression system, and asserted that Arnold used reliable data and established scientific and investigative principles to support his conclusion that a properly functioning fire suppression system would have significantly mitigated the damage from the fire. *See generally* (Dkt. No. 49).

Arnold's report appears to apply reliable principles and methods and applies those principles and methods to the facts gathered during his on-site investigation and his knowledge of

5

fire suppression systems. Arnold's report provides sufficient facts and data to support his conclusions.

Defendant challenges Arnold's reliance on certain facts and argues that the opinions of its experts provide a more reliable account of the cause of the fire and the alleged irrelevance of the fire suppression system not releasing the chemical fire retardant. But while these issues are appropriate matters to address during cross examination of Arnold, they are insufficient to support the exclusion of his expert testimony.

The motion to exclude Arnold as an expert witness is denied.

A. Plaintiff's motion to exclude the testimony of Defendant's expert Jeffrey Berino (Dkt.No. 46):

Defendant's expert Jeffrey Berino is a fire origin and cause investigator with forty years of experience as a firefighter and significant experience investigating fires. (Dkt. No. 46-2 at 2-6). Berino opines that the fire was initially caused by a restaurant employee leaving a plastic object on a two burner range and the melted plastic ignited extensive grease residue and deposits on the floor and in the nearby area. Berino further opines that the fire from the ignited grease migrated to the area of fire suppression system's control box, which caused the system to fail. (*Id*. at 18-19).

Plaintiff challenges Berino's opinions and argues that they are not supported by reliable data and facts. Berino's report documents through photographs his opinions as to the cause of the fire and the damage to the fire system's control box from the intense heat created by the alleged grease fire. Like Arnold, Berino appears to use reliable principles and methods, applies those principles and methods to the facts as he found them and provides sufficient data and facts to support his conclusion. Plaintiff's challenges are appropriate issues to raise on cross examination of Berino but are insufficient to support his exclusion as an expert witness.

The motion to exclude Berino as an expert witness is denied.

B. <u>Plaintiff's motion to exclude Defendant's experts Matthew Dare and Charles Sullivan (Dkt. No. 47):</u>

Matthew Dare holds a Ph.D. in Systems Engineering and is a certified fire investigator and his areas of expertise include materials engineering and failure analysis. Charles Sullivan has 22 years of experience in evaluating and analyzing fire suppression systems. (Dkt. No. 47-4 at 34-49). Dare and Sullivan issued a rebuttal report to Arnold's expert report. They contest Arnold's opinion that the extensive fire damage at Magnolia's was due to the failure of the fire suppression system and attribute excessive grease deposits in and around the two burner range as the primary cause of the fire damage, which ultimately damaged the control box of the fire suppression system. The Dare and Sullivan report contains multiple photographs that they assert demonstrate excessive grease build up near the two burner range. (*Id.* at 17-32).

Dare and Sullivan further opined that the fire suppression system failed because the cartridge holding the wet fire suppression chemicals was damaged due the heat of the fire before fusible links could activate. Dare and Sullivan conducted a study to determine the temperature necessary for the cartridge to fail. They placed a cartridge on a hot plate in a steel containment chamber and increased the heat until the cartridge failed. They found that the cartridge failed at 244.4 degrees and the fusible links were designed to activate at 450 degrees. (*Id*. at 7-8, 25).

Additionally, Dare and Sullivan challenged Arnold's opinion that the fire suppression system failed to activate. They provided photographs of the cartridge which they asserted had a punction mark resulting from the activation of the fire suppression system. They contend, however, that by the time the cartridge was punctured, the cartridge had already failed due to the excessive heat from the fire. (*Id.* at 24).

7

Plaintiff's expert Arnold issued his own rebuttal report challenging Dare and Sullivans' opinions. He contested the method used to determine the cartridge's failure at 244.4 degrees, noting that while he confirmed the cartridge would fail at 245 degrees the surrounding temperature was 503 degrees. Arnold argued this surrounding temperature would have set off the fire suppression system before the cartridge failed. (Dkt. No. 46-4 at 9-10).

In response to Plaintiff's motion, Defendant argues that the similarity in the findings of Arnold and Dare and Sullivan (the cartridge failing in the 244-245 degrees range) confirmed the validity of the Dare and Sullivan test and the relevance of this number is a matter of debate among the experts that should be sorted out before a jury. *See generally* (Dkt. No. 51).

Plaintiff additionally challenges Dare and Sullivan's opinion that the cartridge was punctured after the cartridge had failed due to the heat of the fire. Plaintiff asserts that Dare and Sullivan failed to consider alternative explanations for the timing of the puncture of the cartridge and their opinions are based on insufficient data and facts. (Dkt. No. 47-1 at -9).

The Court finds that Dare and Sullivan utilized appropriate methods and principles, provided sufficient facts and data to support their opinions, and reasonably applied the methods and principles to the facts and date. Arnold's rebuttal report raises reasonable questions that are appropriate issues for cross examination of Dare and Sullivan, but these questions are not sufficient to require the exclusion of the expert testimony of these expert witnesses.

The motion to exclude the testimonies of Dare and Sullivan is denied.

*   *   *

The bottom line is that both Plaintiff's and Defendant's experts have offered plausible explanations for the causes of the fire damage. The course of the Magnolias Restaurant fire and its impact on the fire suppression system are hotly contested by the parties, and there is

circumstantial evidence sufficient to support both the Plaintiff's and Defendant's scenarios. Like many unwitnessed fire cases, the experts, often able and experienced, offer distinctly different opinions on critical issues of in the case. Under the present circumstances, a jury needs to hear the full case and determine which scenario more likely than not caused the extensive fire damage on August 7, 2021.

The Court finds that the testimony of the parties' respective expert witnesses meet Rule 702 standards and should not be excluded under Rule 403.

C. <u>Plaintiff's motion to exclude the testimony of J.R. Nerat (Dkt. No. 45)</u>:

Plaintiff has moved to exclude the testimony of a purported lay witness, J. R. Nerat. Plaintiff argues that Nerat proposes to offer expert opinions. Plaintiff contends said opinions must be excluded because they were presented after the Court's deadline for identifying expert witnesses and, relatedly, Defendant did not submit an expert report from Nerat as Federal Rule of Civil Procedure 26(a)(2)(B) requires. (Dkt. No. 45-1 at 2-3). Defendant has submitted an affidavit from Nerat describing his extensive experience with fire suppression systems and offering opinions based upon a review of materials produced in this lawsuit. Nerat offers a number of opinions relating to the operation of the fire suppression system at Magnolias Restaurant, including that the system fully activated at the time of the fire but failed because of the heat of the fire damaged the cartridge before the chemicals could be released. *See generally* (Dkt. No. 45-3). Nerat's opinions closely align with Defendant's experts Berino, Dare and Sullivan. Defendant concedes some of Nerat's opinions are "improper opinion testimony" but claim that some are based on his firsthand perceptions of the evidence he reviewed and are allowable under Federal Rule of Evidence 701. (Dkt. No. 51 at 21).

9

Defendant misreads the scope of Rule 701 lay opinion evidence. Such evidence must be based on personal perception of the fact at issue and must not rely on any "scientific, technical, or other specialized knowledge." *Farrell*, 921 F.3d at 143-44. The rule does not allow a witness to offer an opinion regarding matters outside the common experience of jurors. *Certain Underwriters at Lloyd's v. Sinkovich*, 232 F.3d at 203.

Nerat's proposed testimony plainly falls within Rule 702, and he is not a proper lay witness under Rule 701. Plaintiff's motion to exclude Nerat as a witness and to strike his affidavit (Dkt. No. 45) is granted.

## IV.  Conclusion

For the reasons set forth above, the Court **GRANTS** Plaintiff's motion to exclude the testimony and to strike the affidavit of Nerat (Dkt. No. 45) and **DENIES** the parties' motion to exclude the expert testimony of Arnold, Berino, Dare, and Sullivan (Dkt. Nos. 43, 46, 47).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

September 2, 2025
Charleston, South Carolina